**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BELL,<br><br>            Plaintiff,<br><br>    v.<br><br>JACKSON TOWNSHIP, et al.,<br><br>            Defendants. | Civil Action No. 14-6259 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

      This is an excessive force case brought by Plaintiff John Bell ("Plaintiff" or "Bell") claiming personal injuries as a result of alleged police misconduct. (*See generally* Compl., ECF No. 1.) This matter comes before the Court on the motions for summary judgment of Defendants Jackson Township, Matthew D. Kunz, David Watson, Theodore Kucowski, and Keith Scott. (ECF Nos. 26, 27, 28, 31.) Plaintiff filed opposition to Defendants' motions (ECF No. 34-13), and Defendants Keith Scott, David Watson, and Theodore Kucowski replied (ECF Nos. 38, 42, 43). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants Matthew D. Kunz and Jackson Township's motion for summary judgment is granted; Defendants Theodore Kucowski and Keith Scotts' motions for summary judgment are denied; and Defendant David Watson's motion for summary judgment is granted in part and denied in part.

## I. Background[1]

### A. October 31, 2012 Wawa Incident

In the wake of Superstorm Sandy, a disturbance involving twenty people fighting over gas occurred at a Wawa convenience store located in Jackson, New Jersey. (Theodore Kucowski's Statement of Facts ("Kucowski's SOF") ¶ 9, ECF No. 28-1.) Following this disturbance, on October 31, 2012, two Jackson Township police officers, Theodore Kucowski ("Kucowski") and David Watson ("Watson"), were detailed to the store to assist in maintaining order. (*Id.*) At approximately 11:14 a.m., these officers came in contact with Plaintiff. (Certification of Guy P. Ryan ("Ryan Cert."), Ex. K ("Wawa Video Surveillance"), ECF No. 28-14.)

On October 31, 2012, Plaintiff and his parents drove two separate vehicles to the Wawa station to get gas. (Certification of Peter J. Van Dyke ("Van Dyke Cert."), Ex. C ("Bell Dep.") 14:1-15, ECF No. 27-6.) While Plaintiff was waiting on line to get gas, he saw another car "drive in the exit past all the cars that were waiting in line, and drive around the back of the gas station." (*Id.* at 17:1-5; 17:15-20.) Plaintiff pointed this car out to Watson and told Watson that this car was cutting the line, and Watson responded saying that Plaintiff should not worry about it and that the driver of the car was probably "just getting coffee." (*Id.* at 17:24- 18:25.) Thereafter, Plaintiff and his father pulled up on either side of the same gas pump at the same time. (*Id.* at 16:3-6.) While at the gas pump, Plaintiff saw the same car that he had pointed out to Watson getting gas. (*Id.* at 19:8-10; 20:5-20.) Plaintiff's demeanor during his interaction with Watson is disputed. Plaintiff testified that when he first pointed out the car to Watson his tone was "normal" and "friendly," and that when he pointed out that the car was getting gas, he was "[k]ind of laughing." (*Id.* at 18:13-18; 21:4.) Kucowski, however, testified that he observed Plaintiff "yelling" at Watson and

---

[1] Unless otherwise indicated, the facts set forth are undisputed.

2

that he was "very agitated" and "red in the face." (Ryan Cert., Ex. F ("*State v. Bell* Transcript") 149:11-15; 150:9-11, ECF No. 28-9.)

Plaintiff and Watson also offer different accounts of Watson's interaction with Plaintiff. Plaintiff testified that in response to showing Watson that the car that cut the line was getting gas, Watson "got angry. Like visibly, like, you know, stormed over and started yelling at me. And he basically walked around the car to get to me." (Bell Dep. 20:23-25.) Plaintiff also testified that while he was waiting to pay for his gas, Watson told him to "get the hell out of here, and then took [his] driver's license." (*Id.* at 21:15-18.) Watson, however, testified that he took Plaintiff's license only after Plaintiff confirmed that he had paid for his gas and refused to leave the pump. (*State v. Bell* Transcript 120:3-24.)

After Officer Watson left with Bell's license, Kucowski approached Bell's open window and asked what was going on. (Bell Dep. 23:22-23.) Plaintiff testified that when he told Kucowski that he was upset that Watson had taken his license, Kucowski started screaming profanity at him. (*Id.* at 23:22-24:3.) In response, Plaintiff told Kucowski "I just want to get my license and go home," and opened his car door. (*Id.* at 35:25-36:4.) Kucowski then ordered Plaintiff to get back into his car. (*Id.* at 37: 7-9.) It is undisputed that Plaintiff complied with this order. The parties dispute, however, whether Plaintiff made a second attempt to get out of his car. Plaintiff testified that in response to Kucowski's order, he "[c]losed, latched [his car door] as tight as can be," and thereafter never opened the car door. (*Id.* at 37:13-23.) Plaintiff, however, testified that he said something to the effect that "if this is how this is gonna [sic] happen, I'm at least getting this on film," and then raised his cellphone with two hands to record Kucowski but remained inside his car with the door closed. (*Id.* at 37:23-25; 38:3-8.) Thereafter, Kucowski attempted to "grab" the cell phone out of his hands, and when Kucowski was unsuccessful, he "grabbed [the car door]

3

handle, ripped open [Plaintiff's] door, leaned in, put his arm around [Plaintiff's] neck and dropped his weight outside of the vehicle," and once Plaintiff was on the ground, he "immediately" got on top of him. (*Id.* at 40:24-41:6.) Plaintiff testified that once he was on the ground, he lay limp and did not attempt to resist arrest, and, while in this limp-state, he felt a second officer jump onto his back and attempt to apply handcuffs. (*Id.* at 45:1-5; 45:7-10.) Plaintiff testified that the officer's attempts to apply handcuffs were unsuccessful, because his thick sweatshirt was covering his wrists. (*Id.* at 45:9-15.) Plaintiff testified that he later learned that the second officer who assisted with his arrest was off-duty Officer Keith Scott ("Scott"). (*Id.* at 46:17-47:6.)

Kucowski, however, testified that after he told Plaintiff to get back into his car, Plaintiff picked up his cell phone and, while holding his phone up, pushed his car door open using either his foot or leg and attempted to get out of his car. (Pl.'s SOF, Ex. H ("Kucowski Trial Testimony") 151:8-15, ECF No. 34-8.) Kucowski testified that in response to Plaintiff's apparent refusal to comply with his instruction and belief that Plaintiff intended to interfere with Watson's investigation, he decided to arrest Plaintiff for obstructing justice. (*Id.* at 153:1-16.) Kucowski testified that, given that Plaintiff had already pushed his car door open, he opened it the "remainder of the way" grabbed Plaintiff by his arm, pulled him to his feet, and then, after Plaintiff "tried to pull away . . . almost like a tug of war type of incident," Kucowski put his arm around his neck and took Plaintiff to the ground. (*Id.* at 151:13-16; 154:12-25.) Scott similarly testified that Plaintiff did not comply with Kucowksi's instruction to stay in his car. (*State v. Bell* Transcript 52:20-53:19.) In addition, non-party witness, Joseph Navarra ("Navarra"), described Plaintiff's behavior during the arrest as "way out of control." (*Id.* at 22:14-18.)

It is undisputed that Kucowski kept one hand under Plaintiff's head to make sure that Plaintiff's face did not touch the concrete when he was on the ground. (Bell Dep. 46:10-12.) It is

4

also undisputed that Watson did not touch Plaintiff during this incident, but was instead restraining Plaintiff's father and mother, who were both screaming. (*Id.* at 48:2-11; Ryan Cert., Ex. E 64:3-12, ECF No. 28-8.) Furthermore, the video surveillance confirms that the whole interaction between Plaintiff and Kucowski lasted about ninety seconds. (Wawa Video Surveillance.)

## B.    Municipal Court Proceeding

After hearing testimony from Watson, Navarra, Plaintiff, and his parents, and reviewing video footage from Wawa's surveillance video cameras, the Honorable Daniel F. Sahin of the Jackson Township Municipal Court found that Plaintiff was guilty of obstruction of justice but was not guilty of resisting arrest. (Certification of Thomas J. Mallon ("Mallon Cert."), Ex. K ("Municipal Court Op."), ECF No. 34-11.) With respect to the obstruction of justice charge, Judge Sahin found that "it is readily apparent that Mr. Bell was 'out of line'" during his interaction with Watson. (*Id.* at 9.) Judge Sahin, however, noted that the obstruction of justice charge was not related to Plaintiff's conduct towards Watson (*Id.*) Rather, the charge was based on Plaintiff's alleged failure to follow Kucowski's instructions. (*Id.*) Plaintiff was specifically charged with "purposely getting out [of] his vehicle after being ordered to remain in his vehicle while police were investigating a disturbance during a state of emergency." (*Id.*)

Based on the Municipal Court Proceeding, Plaintiff stipulated to the dismissal of Count Two (false arrest/false imprisonment) and Count Four (malicious prosecution and false arrest/false imprisonment) of his Complaint in the instant matter. (ECF No. 25.) Plaintiff also stipulated to the dismissal of parts of Count Nine that alleged malicious arrest/imprisonment, which reduced the claims in Count Nine to supplemental claims under the New Jersey Civil Rights Act for excessive force and failure to intervene. (*Id.*) In addition, Plaintiff stipulated to the dismissal of all claims against the New Jersey Department of Corrections. (ECF No. 12.) Accordingly, the

instant motions concern Plaintiff's claims for: (1) excessive force against Individual Officers Kucowski, Watson, and Scott; (2) failure to intervene against Individual Officers Kucowski, Watson, and Scott; (3) supervisory liability against Officer Matthew D. Kunz ("Kunz"); (4) unlawful policy, custom, practice, and inadequate training against Defendant Jackson Township, Kunz; (5) prospective injunctive relief; and (6) violation of the New Jersey Civil Rights Act against Individual Officers Kucowski, Watson, and Scott.

## II.   Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* An issue is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the non-moving party bears the burden of proof at trial, the movant may discharge its burden by pointing to an absence of evidence necessary to support the non-movant's claim. *Id.* at 325. Alternatively, a moving party may submit affirmative evidence that negates a material element of the non-moving party's claim. *Id.* If the movant brings affirmative evidence or makes a showing that the non-movant lacks evidence essential to its claim, the burden shifts to the non-

moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The burden of persuasion, however, rests on the non-moving party to establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Id.* at 322.

To decide whether a genuine dispute of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*, 455 F.3d at 423. On a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. Where, however, "critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining whether there is any genuine dispute as to material facts." *Breeland v. Cook*, No. 12-2511, 2014 WL 820167, at *4 (M.D. Pa. Mar. 3, 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.")). Absent a genuine dispute for trial, summary judgment as a matter of law is proper.

### III. Analysis

#### A. Defendants Watson, Kucowski, and Scott's Motions for Summary Judgment

In Count One of his Complaint, Plaintiff accuses Kucowski, Watson, and Scott of using excessive force when Kucowski "grabbed [Plaintiff] and threw [him] to the ground," and "kneed Plaintiff in the head and ribs during the course of handcuffing him." (Compl. ¶¶ 9, 12.) As an initial matter, given Plaintiff's testimony that he does not believe that Watson touched him in any

way (Bell Dep. 48:2-11; 96:16-22), Watson argues that he is entitled to summary judgment on this claim. (Watson's Moving Br. 6-7[2], ECF No. 27-2.) The Court agrees. *See Miller v. Waterford Twp.*, No. 11-3405, 2014 WL 345296, at *12 (D.N.J. Jan. 30, 2014) (granting summary judgment for officer defendant on excessive force claim where the parties agreed that there was no physical contact between the officer and plaintiffs).

Next, with respect to the claims asserted against Kucowski and Scott, Defendants argue that even accepting Plaintiff's account of this incident, their conduct does not constitute "excessive force." (Kucowski Moving Br. 3-6, ECF No. 28-2; Scott Moving Br. 9-13, ECF No. 31-1.) In the alternative, Defendants argue that, if their conduct is found to constitute excessive force, they are entitled to qualified immunity because a reasonable officer would not have known the conduct at issue was unlawful. (Kucowski Moving Br. 8-13, ECF No. 28-2; Scott Moving Br. 16-20, ECF No. 31-1.) The Court finds that this is a question for a jury.

Excessive force claims arising out of an investigatory stop or arrest are governed by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989)). This inquiry is an objective one, that takes into account the facts and circumstances of each particular case, which include the severity of the crime at issue, whether the suspect poses and immediate threat to the safety of the officers or others, whether the individual is actively resisting arrest, whether an injury was

---

[2] As the pages in this brief are not numbered, the Court shall use the ECF page numbers.

8

sustained by the suspect (and the severity of the injury), the duration of the officer's action, and the number of persons with whom the officers must contend at one time. *See Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004). The reasonableness of a particular use of force is determined from the vantage point of the defendant officer at the time that the incident occurred, not with the benefit of hindsight. *Graham*, 490 U.S. at 396. Courts also recognize that police are often compelled to make split-second decisions as to how to employ force while involved in tense, uncertain, and rapidly evolving circumstances. *Id.* at 397. Thus, "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* at 396 (internal citation omitted). "While determining the question of reasonableness is frequently one that should be left to the ultimate factfinder, summary judgment is appropriate when the court resolves all factual disputes in favor of the plaintiff and concludes that the use of force was objectively reasonable under the circumstances." *Gravely v. Speranza*, 219 F. App'x 213, 215 (3d Cir. 2007).

Here, the parties present different accounts of the arrest. In particular, they dispute whether Plaintiff complied with Kucowski's instruction to remain in his car and whether Plaintiff resisted arrest. Plaintiff testified that once Kucowski told him to get back into his car, he "[c]omplied it with [sic] 100 percent. When [Kucowski] told me to keep [the car door] closed or to get into the car, I got back in and I closed it and said that's fine." (Bell Dep. 37:20-23.) Thereafter, Plaintiff claimed that Kucowski arrested him in response to his attempt to record his interaction with Kucowski. (*Id.* at 40:23-25.) Plaintiff gave the following account of the events that immediately preceded the officers placing him in handcuffs:

> [Kucowski] grabbed my car door .... braced himself .... grabbed [the] handle, ripped open my car door, leaned in, put his arm around my neck and dropped his weight outside of the vehicle. And I just

9

> rolled over, hit the ground and [Kucowski] was immediately on top of me.
>
> . . . .
>
> I broke my fall. When I initially spun out of the vehicle, I landed on my butt, kind of, with my arms behind me. Like keeping my back off the ground as well. And he was kind of, like, in a straddle pose across my, I guess, legs and crotch area.
>
> . . . .
>
> One [of my hands] got stuck underneath me, and [Kucowski] pulled that out pretty quickly and got both hands behind my back. And I was limp at this point. Like I knew what was going on. Whether I thought it was right or not, like nothing good was gonna [sic] happen fighting back. So I just was kind of going with it at that point. And he – Officer Kucowski had his foot on my face and he had, I believe it was, his hand under my head and his foot on my face. And then the other officer jumped out and he joined in and just, like, or . . . jumped on my back. And they were trying to put the handcuffs on me but I had a large hoodie on with like – it was a hoodie that didn't have, like the elastic sleeves. They were just, like big sleeves that kind of hung over, and they were trying to slap the cuffs on me. Like, you know, TV style where they hit them over the hoodie. It's like clack, clack, clack. And, like, there's people there going like, dude, just put the handcuffs on normal. Like yelling at the police officers because they were trying for so long to slap them on me.

(*Id.* at 41:1-6; 44:12-17; 44:24-45:19.) In addition, Plaintiff testified that while he was on the ground he "got kneed pretty hard in the ribs." (*Id.* at 60:10-11.) He, however, testified that he didn't know if this was intentional. (*Id.* at 60:11-12.) Plaintiff also testified that it was about "a minute and a half" from the time Kucowski "grab[bed]" him to the time he was handcuffed, and that Kucowski had his hand under Plaintiff's head during the incident so that Plaintiff's head did not strike the ground, and that Plaintiff did not receive any medical treatment for any injuries allegedly caused by this incident. (*Id.* at 43:15-19, 49:2-6.)

Kucowski and Scott's descriptions of the events preceding placing handcuffs on Plaintiff differ from Plaintiff's account in the following critical respects: (1) Kucowski and Scott testified

that Plaintiff pushed his car door open, in violation of Kucowski's order to keep it closed, thus creating the probable cause for arrest (*State v. Bell* Transcript 153:21-23; 71:24-72:3); (2) Kucoswki testified that he grabbed Plaintiff's arm to pull him out of his car rather than putting his arm around his neck (*id.* at 151:13-16; 154:12-25); (3) Kucowski and Scott testified that Plaintiff resisted arrest by pulling away from him once he was out of his car (*id.* at 154:12-25; 63:1-4); and (4) Kucowski testified that Plaintiff held the phone right up to his face while he was trying to make the arrest (rather than before) (*id.* at 154:6-10).

The video footage does little to resolve the different accounts of the arrest. In particular, the footage is not conclusive as to whether Plaintiff or Kucowski opened the car door just before his arrest. The video footage does, however, reveal the short duration of the incident. From the video footage it appears that less than ninety seconds elapsed from the time that Kucowski touched Plaintiff to the time that Plaintiff was placed in handcuffs. (Wawa Video Surveillance, Camera 9 footage frames 133 to 188, Camera 13 footage frames 240 to 243.)

Construing the facts in the light most favorable to Plaintiff, the Court considers whether Kucowski's conduct would constitute excessive force if, as Plaintiff alleges, he was complying with Kucowski's instructions to remain in his car. Accepting this account of the facts, the Court finds the conduct at issue would include removing Plaintiff from his car and taking him to the ground when he was not resisting arrest. Considering the factors for an excessive force inquiry, the Court finds that, given that the offense at issue was obstruction of justice, the low offense level of the crime and Plaintiff's failure to resist arrest weigh in favor of finding that the force used was excessive. On the other hand, the Court finds that Kucowski and Scott's concern for their safety, which was supported by Plaintiff's testimony that he thought "Officer Watson was afraid that my father was gonna jump in. And my father, he's a big dude, so he probably had a valid concern,"

weighs against finding that the force used was excessive. (Bell Dep. at 95:12-22.) Given Plaintiff's acknowledgment that his father appeared likely to intervene, it was reasonable for Kucowski and Scott to also perceive Plaintiff's father as a threat to their safety during the arrest. In addition, the short duration of the incident – ninety seconds; absence of serious injuries; absence of mace, pepper spray, batons, tasers or any other weapons; and the protective measure taken by Kucowski of placing his hand under Plaintiff's head to shield him from injury, also weigh against finding that the force was excessive. Furthermore, the Court takes into account the circumstances giving rise to the officers' presence at the Wawa station, which include Governor Chris Christie's declaration of a state of emergency following Superstorm Sandy, the number of people attempting to get gas, and a prior instance of violence at the same Wawa station involving a dispute over gas. As Plaintiff testified, "everything was probably happening a little too fast and everyone was fired up." (Bell Dep. 94:5-6.) Likewise, Kucowski testified that on the day of the incident, given previous instances of violence involving "police interaction at gas stations" in the wake of Superstorm Sandy, he felt there was a "heightened security risk." (*State v. Bell* Transcript 136:19-24.)

Taking this evidence together, the Court finds that, while it is a close question, crediting Plaintiff's testimony that he did not resist arrest and was complying with Kucowski's instructions to the remain in his car, a reasonable juror could find that it was objectively unreasonable to forcibly remove Plaintiff from his car and force him to the ground to arrest him for the charge of obstruction of justice. Likewise, the Court finds that a reasonable juror could find that forcibly moving and forcibly taking down an individual who was not resisting arrest violated a clearly established constitutional right and thus the officers are not entitled to qualified immunity for this conduct. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)) (stating that qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'"); *see also Wheeler v. City of Jersey City*, No. 12-7528, 2016 WL 1029271, at *3 ("[T]he right to be free from excessive force during arrest is clearly established.") (D.N.J. Mar. 14, 2016). While the officers' conduct may appear objectively reasonable if the Court were to credit the officers' accounts of the arrest, which include Plaintiff's disruptive demeanor, Plaintiff's failure to comply with Kucowski's orders, and Plaintiff's attempt to resist arrest, on a motion for summary judgment the Court may not make credibility determinations and must construe disputed facts in favor of the non-moving party. *See Boyle v. Cty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) ("[A]t the summary judgment stage, a court may not weigh the evidence or make credibility determinations; these tasks are left to the fact-finder."). Thus, triable disputes of material fact exist as to Plaintiff's excessive force claim, and summary judgment is not appropriate. Likewise, given that the claim for failure to intervene against Watson, Kucowski, and Scott is predicated on a finding of excessive force, summary judgment is also inappropriate as to the failure to intervene claim.[3]

### B. Jackson Township and Chief Matthew D. Kunz's Summary Judgment Motion

Finally, Plaintiff "takes no position" as to Defendants Jackson Township and Chief Matthew D. Kunz's motion for summary judgment as to Count Five (§ 1983 Supervisor Liability), Count Six (§ 1983 Unlawful Policy, Custom, Practice, Inadequate Training), and Count Eight

---

[3] Because the same standard of reasonableness that is applied to Plaintiff's federal claims applies to his claims under the New Jersey Civil Rights Act ("NJCRA"), summary judgment is also inappropriate as to his state law claims. *See Samoles v. Lacey Twp.*, No. 12-3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) ("The NJCRA was modeled after § 1983, and thus courts in New Jersey have consistently looked at claims under the NJCRA 'through the lens of § 1983.'")(quoting *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011)).

(§ 1983 Demand of Prospective Injunctive Relief) of the Complaint. (Pl.'s Opp'n Br. 1, ECF No. 34-13.) Because Plaintiff has failed to identify any supervisory practice or unlawful custom, practice, or policy/training that permitted officers to violate a citizen's constitutional rights, these claims fail. *See Blacknall v. Citarella*, 168 F. App'x 489, 492 (3d Cir. 2006) (describing supervisor liability claim); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978) (describing § 1983 unlawful policy claim); *see also Samoles v. Lacey Twp.*, No. 12-3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (holding that "[p]laintiffs have no viable claim for any constitutional violation, and thus there is no basis on which to award injunctive relief").

## IV. Conclusion

For the reasons set forth above, Defendants Matthew D. Kunz and Jackson Township's motion for summary judgment is granted; Defendants Kucowski and Scotts' motions for summary judgment are denied; and Defendant Watson's motion for summary judgment is granted in part and denied in part. An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: June 30, 2016